**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IOANNIS NIKOLAOS PELAGIDIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-3798 |
| | § | |
| FUTURE CARE, INC., MARINE | § | |
| MANAGEMENT SERVICES M.C., | § | |
| LONDON P&I CLUB, VALERO | § | |
| MARKETING AND SUPPLY COMPANY, | § | |
| AND VALERO ENERGY CORPORATION, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION GRANTING
THE PLAINTIFF'S MOTION FOR REMAND**

Ioannis Pelagidis was injured by an exploding air valve while working as an engineer aboard

a tanker ship in December 2016. He sued Future Care, Inc., Marine Management Services M.C.,

London P&I Club, Valero Marketing and Supply Company, and Valero Energy Corporation in Texas

state court on October 5, 2017. London P&I Club filed a notice of removal, and Pelagidis moved

to remand. (Docket Entry No. 6). The court heard argument from counsel and requested

supplemental briefing on three issues relating to remand, and the parties complied. (Docket Entry

Nos. 25, 26–31). Based on a careful review of the motions, the responses, and the supplemental

briefing; the arguments of counsel; the record; and the applicable law, the court grants the motion

for remand. The reasons are set out below.

## I.    Background

Pelagidis alleges that in December 2016, while he was working for Marine Management as

an engineer aboard the tanker ship *M/T United Ambassador*, he was injured by an exploding air

1

valve.  Marine Management had contracted with Valero Energy Corporation to store "Vacuum Gas Oil Max 2," a petroleum product, aboard the *M/T United Ambassador* while waiting for instructions from Valero to deliver the product to a refinery for processing.  Marine Management expected to store the product for 10 to 45 days before delivery.  The pleadings do not make clear the role of Future Care or London Club.  On December 12, 2016, the *M/T United Ambassador* anchored at the Sabine Pass Anchorage.  The accident occurred on December 21.

Pelagidis sued under the Jones Act, 46 U.S.C. § 883, and general maritime law.  Although it is unclear from the state-court petition, the briefs and arguments clarify that Pelagidis asserts a Jones Act claim only against Marine Management.  He asserts general maritime-law claims for negligence and gross negligence against all the defendants.

London Club removed on December 18, 2017, and Pelagidis moved to remand on January 17, 2018.  (Docket Entry Nos. 1, 6).  Pelagidis asserted two grounds for remand: (1) the removal notice was untimely and does not meet the statutory requirements; and (2) the case was not removable.  (*Id.*).  London Club and Future Care jointly responded, and Marine Management filed a separate response.  (Docket Entry Nos. 16, 18).  London Club, Marine Management, and Pelagidis all filed supplemental briefing on the issues the court identified at the February 27, 2018 oral argument.  (Docket Entry Nos. 26–31).

## II.    Analysis

### A.    Timeliness

Pelagidis first argues that London Club filed its notice of removal after the 30-day removal period ended.  Pelagidis sued on October 5 and London Club removed on December 18.  The issue is when the 30-day removal period began.

Pelagidis admits that he had not served London Club when it filed its notice of removal. Pelagidis argues that because London Club and Future Care were represented by the same attorney, London Club had constructive notice of the lawsuit when Future Care was served on October 13. Pelagidis argues that the removal clock started on that date, making the removal untimely. London Club argues that Pelagidis's argument is foreclosed by *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), which holds that the removal clock begins only on formal service of process. London Club is correct.

Title 28 U.S.C. § 1446(b)(1) provides:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

Pelagidis focuses on the language requiring the notice of removal to be filed within 30 days "after the receipt by the defendant, through service *or otherwise*," of the pleadings. According to Pelagidis, London Club knew about and received the petition through counsel when Future Care was served in October 2017. Removal was therefore untimely, Pelagidis argues, and the court must remand.

This argument is not persuasive. The federal removal and jurisdiction statutes "clearly provide that a defendant's right to removal runs from the date on which it is formally served with process." *Thompson v. Deutsche Bank Nat'l Tr. Co.*, 775 F.3d 298, 303 (5th Cir. 2014) (citing *Murphy Bros.*, 526 U.S. at 347–48). "Put another way, 'one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend.'" *Id.* (quoting

3

*Murphy Bros.*, 526 U.S. at 350). "A defendant has no obligation to appear in court or defend an action before it is formally served with process directing it to appear before that forum. Only after a party is subject to the powers of a court, must it seek to effect removal." *Id.* "To the point, the defendant in *Murphy Brothers* was aware of the pending litigation when it received a courtesy copy of the complaint from the plaintiff, but the defendant was not required to remove the action until it was formally served." *Id.* (citing *Murphy Bros.*, 526 U.S. at 347–48). Pelagidis concedes that London Club was not formally served before the December 18 hearing.

Without formal service, London Club had no duty to remove the case, even if it was aware of the lawsuit through counsel shared with another, formally served defendant. As London Club notes, *Murphy Brothers* explained:

> [T]he so-called 'receipt rule'—starting the time to remove on receipt of a copy of the complaint, however informally, despite the absence of any formal service—could, as the District Court recognized, operate with notable unfairness to individuals and entities in foreign nations. Because facsimile machines transmit instantaneously, but formal service abroad may take much longer than 30 days, plaintiffs 'would be able to dodge the requirements of international treaties and trap foreign opponents into keeping their suits in state courts.'

526 U.S. at 356.

The removal period did not begin to run until London Club was formally served. Failure to timely remove is not a basis on which to remand.

## B.      Failure to Obtain the Consent of All Defendants

Pelagidis sued Future Care, Marine Management, London Club, Valero Marketing and Supply, and Valero Energy Corporation. Pelagidis argues that remand is required because the Notice of Removal fails to establish that all of the defendants had consented to the removal.

4

Title 28 U.S.C. § 1446 requires that all defendants consent to removal. "This 'rule of unanimity' requires that there be 'some timely filed written indication from each served defendant, or from some person or entity purporting to formally act on its behalf in this respect and to have the authority to do so, that it has actually consented to such action'; each defendant does not need to sign the notice of removal to effect removal." *Moreno Energy, Inc. v. Marathon Oil* Co., 884 F. Supp. 2d 577, 582 (S.D. Tex. 2012) (quoting *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 n.11 (5th Cir.1988)). "There need only be some timely filed written indication from each defendant or from someone purporting to represent that defendant formally." *Id.* (citing *Getty Oil*, 841 F.2d at 1262 n. 11). Exceptions to the rule that all defendants must join in the removal petitions to effect removal exist when: (1) the defendant was not yet served with process when the removal petition was filed; (2) a defendant is merely a nominal, unnecessary or formal party-defendant; and (3) the removed claim is separate and independent under 28 U.S.C. § 1441(c). *Id.* at 582–83.

In the notice of removal, London Club's attorney stated, "I hereby certify that I have contacted counsel for all Defendants who have been properly joined and served by Plaintiff herein and they consent to this removal on behalf of their clients, including consent to a jury trial as requested by Plaintiff." (Docket Entry No. 1 at 6). London Club and Future Care include emails with their response to the motion to remand stating that Valero's attorney had consented to removal, as London Club represented. (Docket Entry No. 16-7). London Club argues that consent was not required from Marine Management because it had not been served at the time of removal, nor from either Valero defendant, because both were fraudulently joined.

Pelagidis argues that "the Fifth Circuit has cautioned against using non-specific certifications from a co-counsel, such is attached to the Notice of Removal in this case." (Docket Entry No. 6 at

6) (citing *Getty Oil*, 841 F.2d at 1262 n.11). London Club argues that *Getty Oil* was decided before

the 2011 amendments to 28 U.S.C. § 1446, and that neither the prior or amended statute specifies

the form for the consent to removal. London Club relies on *Griffioen v. Cedar Rapids & Iowa City*

*Ry. Co.*, 785 F.3d 1182 (8th Cir. 2015), for the proposition that there is no set form for written

consent to removal:

> It is true that we have specifically advised non-removing defendants
> who wish to consent to removal to 'either sign the notice of removal
> or file a timely and unequivocal consent.' Nevertheless, we have
> recognized that the written indication of consent can come in various
> forms, and we have been 'disinclined to apply the unanimity
> requirement in a hypertechnical and unrealistic manner.' So also
> here, we are once again disinclined to adopt a hard-line requirement,
> particularly in light of the new language of § 1446. The 2011
> amendments to § 1446 that codified the rule of unanimity did not
> describe the form of or time frame for consent when multiple
> defendants are involved. By comparison, § 1446 as amended lays out
> in detail the procedures for the notice of removal, including the form
> of the notice and the time frame for each defendant to file it in a
> multiple-defendant action. Congress could have defined with equal
> specificity the form of or time for consent but chose not to do so. Its
> failure to do so dissuades us from adopting a rule that places form
> over substance.
>
> Furthermore, we believe that policy considerations support the
> validity of the consent in the circumstances of this case. The
> potential for Rule 11 sanctions and a codefendant's opportunity to
> alert the court to any falsities in the removing defendant's notice
> serve as safeguards to prevent removing defendants from making
> false representations of unanimous consent and forcing codefendants
> into a federal forum against their will. And although there may be
> instances in which these safeguards alone are not sufficient, as long
> as the removing defendant's codefendant itself later files an
> indication of its consent, any potential concern that the codefendant
> has not authorized or manifested its binding consent to removal is
> mitigated.

785 F.3d at 1187; *see also Gillis v. La.*, 294 F.3d 755 (5th Cir. 2002) (giving effect to a notice of

consent filed in the 30-day removal period but not actually authorized until later).

*Smith v. Nat'l Retail Props.*, No. 2:16-CV-222, 2016 U.S. Dist. LEXIS 94402 (S.D. Tex. 2016), is similar. In *Smith*, "NRP did not join in the removal, but TSC alleged its consent in the body of the notice of removal," as London Club has done here. *Id.* at *3–4. In response to the plaintiff's motion to remand, the removing defendant submitted a redacted email thread showing that the codefendant had consented to removal, as represented in the notice of removal. The court found that "[a]n email exchange is competent evidence of authority to consent," and that "[t]he allegation of timely consent was included in the notice of removal by an attorney who NRP had authorized, in writing, to communicate that consent. Contrary to Smith's argument, such an authorized representation was not prohibited by *Getty Oil*. In *Getty Oil*, there was no evidence to substantiate that the removing party's representations were accurate." *Id.* at *8 (citing 841 F.2d at 1262, n.11).

Here, as in *Smith*, London Club represented that it was authorized to remove on behalf of the Valero codefendants and Future Care, which is represented by the same attorney as London Club. In addition, as in *Smith*, there is extrinsic evidence confirming that the representations were accurate. Lack of consent from the Valero defendants is not a basis to remand.[1]

In its notice of removal, London Club stated that "[t]here is no return of service on file indicating that Defendant Marine Management Services M.C. has been served with civil process. Defendant Marine Management Services M.C. has not entered an appearance in the state court action." (Docket Entry No. 1 at 3). Marine Management had not been served when London Club removed, and its consent was not required. *See* § 1446(b)(2)(A) ("all defendants who have been

---

[1] London Club argues that the Valero defendants were fraudulently joined because Pelagidis asserts separate and distinct claims against them. Because the Valero defendants did consent, the court need not reach these arguments.

properly joined *and served* must join in or consent to the removal of the action.") (emphasis added); *Tilley v. Tisdale*, 914 F. Supp. 2d 846, 850 (E.D. Tex. 2012) ("Thus, a defendant who has not been properly served need not consent to removal."). Marine Management has since affirmatively consented to removal. (Docket Entry No. 18 at 13).

The removal was timely and complied with the statutory requirements. Remand on the ground of procedurally defective removal is denied.

## C.     The Removability of the Claims

Finding neither of Pelagidis's procedural arguments persuasive, the court turns to the harder issues. Are the general maritime-law claims and the Jones Act claim removable? Pelagidis argues that because he asserts both Jones Act and general maritime-law claims, the case cannot be removed. London Club, against which Pelagidis asserts only general maritime-law claims, argues that these claims are removable. Pelagidis asserts general maritime-law claims against all defendants and argues that the claims are not removable unless there is a separate, independent basis for federal jurisdiction, which the defendants do not assert. Maritime Management argues that the Jones Act does not apply to this case because, under a choice-of-law analysis, Greek law governs, making the nonremovability of Jones Act claims irrelevant.

For the reasons set out below, the court agrees with Pelagidis that his general maritime-law claims are not removable without an independent jurisdictional basis, which is not present here. The court also agrees with Marine Management that the Jones Act does not apply. But because the court lacks a separate basis to retain jurisdiction over the maritime-law claims, the case must be remanded.

### i.     The General Maritime-Law Claims

Whether maritime-law claims brought in state court are within the removal jurisdiction of

federal courts "is a question that has been beset by confusion and uncertainty over the years . . . ." *Gregoire v. Enter. Marine Servs., LLC*, 38 F. Supp. 3d 749 (E.D. La. 2014) (quoting 14A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3674 (4th ed. 2017)). Under 28 U.S.C. § 1333, federal district courts have original jurisdiction of "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). The parties agree that a claim arising under the "saving to suitors clause" of § 1333 allows state-court jurisdiction over certain admiralty claims. Historically, general maritime-law claims under the saving-to-suitors clause were not removable without an independent basis for federal jurisdiction. *See, e.g.*, *Morris v. TE Marine Corp.*, 344 F.3d 439, 444 (5th Cir. 2003) (citing *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 377–79 (1959)). Because general maritime-law claims do not "arise under" the laws of the United States, they were removable only if diversity of citizenship or a federal-question is present, other than the maritime nature of the claims. *See, e.g.*, *In re Dutile*, 935 F.2d 61, 62 (5th Cir. 1991); *see also* 14A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3674 ("The preferable conclusion from a policy perspective, and the one that seemed most consistent with what appeared to be the law, was to permit the removal of admiralty and maritime actions only when they would be removable on some basis other than their maritime or admiralty nature. This would permit the removal of a case that otherwise would have been removable as a diversity of citizenship case . . . or because the action could have been removed as a federal question case for reasons other than its maritime character."). Those requirements are not met here; Pelagidis and Marine Management are both Greek citizens, and there is no non-admiralty basis for a federal question.

In 2011, Congress amended the removal statute, 28 U.S.C. § 1441. District courts disagree

about the amendment's impact on the removability of general maritime-law claims brought under the saving-to-suitors clause. In *Ryan v. Hercules Offshore, Inc.*, 945 F. Supp. 2d 772 (S.D. Tex. 2013), a court in the Southern District of Texas held that a general maritime-law claim was removable on its own, without an independent jurisdictional basis. The parties dispute whether the *Ryan* analysis applies.

The Fifth Circuit has not addressed the relationship between the 2011 amendment to § 1441 and the removability issue presented here. *See, e.g.*, *Sangha v. Navig8 Shipmanagement Private Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018) ("[T]he question of subject-matter jurisdiction presented in this case—whether the saving-to-suitors clause of the federal maritime statute prohibits removal of general maritime claims absent an independent basis for federal jurisdiction in light of Congress's December 2011 amendment to the federal removal statute—is not clear. The vast majority of district courts considering this question have maintained that such lawsuits are not removable. However, because there is no binding precedent from this circuit . . . there remains a consequential number of district courts that have held to the contrary."); *Riverside Constr. Co. v. Entergy Miss., Inc.*, 626 Fed. App'x 443, 447 n.3 ("We note that we do not decide the effect, if any, of Congress's 2011 amendment of § 1441(b) on a party's ability to remove a maritime case absent an independent basis for jurisdiction. We only observe that this issue is hotly contested and unresolved . . . .") (citations omitted).

In *Ryan*, the court found that Congress had substantially changed §s 1441(b) and that those changes allowed the removal of maritime-law claims based on original federal jurisdiction. 945 F. Supp. 2d at 778. Pelagidis argues that in the five years since *Ryan*, the majority of courts have rejected its reasoning and that the opinion's author himself questioned it in *Sanders v. Cambrian*

*Consultants Am., Inc.*, 132 F. Supp.3d 853 (S.D. Tex. 2015).

In *Sanders*, the plaintiff asked the court to reconsider *Ryan*, and the court did so:

> The court starts this analysis by noting that *Ryan* was properly decided on the facts and arguments presented in that case. Several courts considering similar facts and arguments have followed *Ryan*. Several others have elected not to follow *Ryan*. In the absence of binding authority and given the dramatic change to admiralty law associated with the court's reading of the amended statute, disagreement amongst the district courts was not unexpected. Disagreement alone does not cause the court to waiver in its confidence in its decision in the *Ryan* case. That being said, the court is charged with ensuring justice is done, and it is thus willing to reconsider previous decisions when new arguments or facts merit taking a second look.

*Id.* at 857–58.

The plaintiff in *Sanders*, the court found, raised "a sophisticated argument" not raised in *Ryan*: that once admiralty claims were brought in state court, they were no longer within original federal-court jurisdiction. *Id.* In addition, *Ryan* was decided before the case law and secondary commentary analyzing the relationship between the § 1441 amendments and admiralty claims brought under the saving-to-suitors clause. The *Sanders* court pointed to *Gregoire v. Enterprise Marine Services, LLC*, 38 F. Supp.3d 749 (E.D. La. 2014), as "[t]he best example of scholarly work on . . . why the amendments to the removal statute do not impact the historical bar on removal of maritime claims filed at law in state court." *Sanders*, 132 F. Supp.3d at 858. "Specifically, when a maritime claim is filed in state court under the Savings to Suitors Clause, it is transformed into a case *at law*, as opposed to admiralty. The federal district courts thus do not have original jurisdiction under the Savings to Suitors Clause, which provides original jurisdiction over '[a]ny civil case of *admiralty or maritime jurisdiction*, saving to suitors in all cases all other remedies to which they are

otherwise entitled.'" *Id.* (citing 28 U.S.C. § 1333; *Gregoire*, 38 F. Supp. 3d at 759–62.) (emphasis in original).

London Club argues that *Gregoire* and *Sanders* "must yield" to the Fifth Circuit's opinion in *Baris v. Sulpico Lines, Inc.*, 932 F.2d 1540 (5th Cir. 1991). In *Baris*, the Fifth Circuit considered a case asserting claims under general maritime law and the Death on the High Seas Act, 46 U.S.C. § 303. *Baris* was filed in state court under the saving-to-suitors clause. There was no diversity of citizenship. The defendants removed, and the plaintiffs did not timely move to remand. The issue was whether the federal court had jurisdiction over an action that was not removable but was otherwise within its original federal jurisdiction and had been improperly removed. The Fifth Circuit concluded that the federal court had jurisdiction because the case was within the court's original jurisdiction and the removal was procedurally, but not substantively, defective. Procedural defects, unlike substantive defects, are waivable. The *Baris* plaintiffs waived their right to challenge removability when they failed to timely object by moving to remand. Because the case could have been brought in federal court under the court's original jurisdiction, the court had jurisdiction, even if the removal was procedurally defective. 932 F.3d at 1546.

*Baris*, London Club argues, shows that general maritime-law claims are within the federal court's original jurisdiction when they are brought in state court under the saving-to-suitors clause, contrary to what *Gregoire* and *Sanders* hold. London Club also cites *Exxon Mobil Corp. v. Starr Indem. & Liab. Ins. Co.*, 181 F. Supp. 3d 347, 360 (S.D. Tex. 2015) (Hittner, J.), in which the court stated that "under *Baris*, filing an admiralty case pursuant to the Savings to Suitors clause in state court does not transform the action in such a way as to divest the Court of the original admiralty jurisdiction it would have had if the case was initiated in federal court." The defendants argue that

12

*Ryan* is a valid basis to deny remand and urge the court to follow it. Marine Management asks that the removal issue be set aside and this case instead await resolution on the jurisdictional issues set out in pending (but not yet ripe) motions to dismiss. Marine Management notes that the Fifth Circuit has not disapproved of *Ryan* and that the Seventh Circuit "implicitly adopted" it in *Lu Junhong v. Boeing Co.*, 792 F.3d 805 (7th Cir. 2015). However, the Seventh Circuit did not consider the impact of the saving-to-suitors clause in its decision.

Several judges, including this judge, followed *Ryan* shortly after it issued. *See Exxon Mobil Corp. v. Starr Indem. & Liab. Co.*, CIV.A. H-14-1147, 2014 U.S. Dist. LEXIS 82434, at *2 (S.D. Tex. June 17, 2014); *Provost v. Offshore Service Vessels, LLC*, CIV.A. 14-89-SDD-SCR, 2014 U.S. Dist. LEXIS 76764, 2014 WL 2515412, at *3 (M.D. La. June 4, 2014); *Garza v. Phillips 66 Company*, CIV.A. 13-742-SDD, 2014 U.S. Dist. LEXIS 45511, 2014 WL 1330547, at *4 (M.D. La. April 1, 2014); *Carrigan v. M/V AMC AMBASSADOR*, CIV.A. H-13-03208, 2014 U.S. Dist. LEXIS 12484, 2014 WL 358353, at *2 (S.D. Tex. Jan. 31, 2014); *Bridges v. Phillips 66 Co.*, CIV.A. 13-477-JJB, 2013 U.S. Dist. LEXIS 164542, 2013 WL 6092803, at *5 (M.D. La. Nov. 19, 2013); *Wells v. Abe's Boat Rentals Inc.*, No. H-13-1112, 2013 U.S. Dist. LEXIS 85534, 2013 WL 3110322, at *3 (S.D. Tex. June 18, 2013). But more recent cases have declined to adopt its reasoning. *See Langlois v. Kirby Inland Marine, LP*, 139 F. Supp. 3d 804, 809–10 (M.D. La. 2015) (collecting many cases rejecting *Ryan*). The majority of courts faced with the question decline to follow *Ryan*, including courts within the Southern District. *See Harrison v. Crowley Mar. Corp.*, 181 F. Supp. 441 (S.D. Tex. 2016); *Waddell v. Edison Chouest Offshore*, 93 F. Supp. 3d 714, 721 (S.D. Tex. 2015); *Jimenez v. U.S. Envtl. Servs., LLC*, No. 3:14-CV-0246, 2015 U.S. Dist. LEXIS 103441 (S.D. Tex. Aug. 6, 2015) (discussing criticisms of *Ryan* that consider the "saving to suitors" clause to be

an Act of Congress that precludes removal, express concern that *Ryan* may undermine a plaintiff's right to a jury trial, and construe § 1441 strictly because it implicates federalism concerns); *Ritchey v. Kirby Corp.*, No. 3:14-CV-0272, 2015 U.S. Dist. LEXIS 102658 (S.D. Tex. Aug. 5, 2015) (same); *Clear Lake Marine Ctr., Inc. v. Leidolf*, No. H-14-3567, 2015 U.S. Dist. LEXIS 52885 (S.D. Tex. Apr. 22, 2015); *Parker v. U.S. Envtl Servs., LLC*, No. 3:14-CV-292, 2014 U.S. Dist. LEXIS 175866 (S.D. Tex. Dec. 19, 2014) (declining to follow *Ryan* and finding that the language of §1441 is "far from clear" because nothing in the legislative history indicates Congress's intent to change maritime jurisdiction and following *Ryan* would "upset an important, well-established balance between state and federal court jurisdiction over maritime claims"); *Rutherford v. Breathwite Marine Contrs., Ltd.*, 59 F. Supp. 3d 809, 813 (S.D. Tex. 2014) (*Ryan* ignored significant precedent that the saving-to-suitors clause itself makes actions nonremovable); *Figueroa v. Marine Insp. Servs., LLC*, 28 F. Supp. 3d 677 (S.D. Tex. 2014) (allowing removal of saving-to-suitors claims allows defendants to eliminate the plaintiff's right to a jury trial and removal is improper without an independent jurisdictional basis); *Rogers v. BBC Chartering Am., LLC*, No. 4:13-CV-3741, 2014 U.S. Dist. LEXIS 30104 (S.D. Tex. Mar. 3, 2014); *Alexander v. Seago Consulting, LLC*, No. 4:14-CV-1292, 2014 U.S. Dist. LEXIS 91368 (S.D. Tex. 2014).

This court faced the question of the removability of general maritime-law claims once before, in *Abe's Boat Rentals*, 2013 U.S. Dist. LEXIS 85534, at \*3. That case had different facts than *Ryan*. In *Abe's Boat Rentals*, the Outer Continental Shelf Lands Act applied to make the claims removable as federal-question claims. *Id.* at \*10. And the case law was different when *Ryan* issued. This court determined that, assuming that the claims fell under general maritime law, *Ryan* would have made them removable because "[t]he *Ryan* court's analysis of the effect of the amended version of the

14

removal statute [was] consistent with the case law analyzed" at the time. *Id.* at *8. The case law has changed. As more courts and scholars have considered the issue, *Ryan* has become a minority position. While the law is still unclear, the trend against *Ryan*, the valid questions that many courts raise as to its reasoning outside its narrow facts, and the mandate to strictly construe the removal statute and resolve "any doubt as to the propriety of removal . . . in favor of remand," mean that removal based on the general maritime-law claims cannot stand. *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (citation omitted).

### ii.    Are the Jones Act Claims Removable?

Pelagidis argues that his Jones Act claim against Maritime Management bars removal. Marine Management argues that the Jones Act does not apply and therefore does not bar removal. Although the court concludes that the Jones Act does not apply and does not prohibit removal, nonetheless the court has no independent jurisdictional basis on which to retain the claims against Marine Management. The motion to remand is granted.

"The Jones Act provides a remedy and guarantees a right to trial by jury for seamen who are injured or die in the course of employment." *Sanders*, 132 F. Supp. 3d at 855 (citing 46 U.S.C. § 30104). "It is settled that as a general rule Jones Act cases are not removable." *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 356 (5th Cir. 1999); *see also Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995). The Jones Act incorporates the Federal Employers Liability Act, which makes claims under it nonremovable. "It is axiomatic that Jones Act suits may not be removed from state court because 46 U.S.C. § 688 (the Jones Act) incorporates the general provisions of the Federal Employer's Liability Act, including 28 U.S.C. § 1445(a), which in turn bars removal." *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993); *see also Sanders*, 132 F. Supp. 3d at 855

("[The defendant] concedes that Jones Act claims are not removable per 28 U.S.C. § 1445(a), which is incorporated into the Jones Act.").

When "a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute" is joined with a federal-law claim, the court "shall sever from the action [the nonremovable claim] and shall remand the severed claims to the State court from which the action was removed." 28 U.S.C. § 1441(c)(1)(B),(2). "With the enactment of the Federal Court Jurisdiction and Venue Clarification Act of 2011, a court with a case involving both federal and state claims is required by Section 1441(c)(2) to remand any of the claims that are not within the original or supplemental jurisdiction of the federal courts or that have been made non-removable by statute. As a result, a Jones Act claim joined with a removable separate and independent claim must be severed and remanded to effectuate the non-removability of Jones Act cases." 14A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3674; *see also Landerman v. Tarpon Operating & Dev., L.L.C.*, 19 F. Supp. 3d 678, 684–678 (E.D. La. 2014) ("[I]n accordance with the mandatory language of § 1441(c), the Court simply severs [the Jones Act claim] and remands it to state court."); *Shultz v. Hercules Offshore, Inc.*, No. 1:14-CV-188, 2014 U.S. Dist. LEXIS 67449, at *10 (E.D. Tex. May 15, 2014) (same).

A Jones Act claim is severed and remanded if an otherwise removable separate claim is within federal-question jurisdiction under 28 U.S.C. § 1331. *See Freeman v. Phillips 66 Co.*, No. 14-311; 14-624, 2014 U.S. Dist. LEXIS 48357, at *22 (E.D. La. Apr. 8, 2014). "Emphatically, claims in admiralty, whether designated in rem or in personam, do not fall within this category." *Id.* (quoting *Dutile*, 935 F.2d at 62–63); *see also Romero*, 358 U.S. at 378). "Thus, even if the claims are otherwise removable on the basis of admiralty jurisdiction . . . the defendants cannot overcome

the statutory bar to removal in 28 U.S.C. § 1445(a), which is made applicable by 46 U.S.C. § 30104." *Id.* at \*24; *see also Unterberg v. Exxon Mobil Corp.*, No. 14-00181 JMS-RLP, 2014 U.S. Dist. LEXIS 94009, at \*29 (D. Haw. July 10, 2014). Pelagidis's Jones Act claim cannot be severed and remanded in order to retain the general maritime-law claims in federal court.

Marine Management also argues that the Jones Act claim was fraudulently pleaded and does not bar removing the case. The court requested additional briefing on what it may consider in deciding whether the Jones Act claim was removable. Pelagidis argues that the court is restricted to considering only the pleadings, which, if the disputed factual allegations are resolved in Pelagidis's favor, show a reasonable possibility that he can recover on his Jones Act claim.

A Jones Act claim is fraudulent if it is made in an attempt to avoid removal. *See, e.g.*, *Fields*, 182 F.3d at 356; *Lockhart v. Applied Coating Servs.*, No. 05-1630, 2005 U.S. Dist. LEXIS 13387 (E.D. La. June 24, 2005) ("When . . . the removing party alleges that a Jones Act claim has been fraudulently pleaded to prevent removal, the Court may 'pierce the pleadings' to determine whether the Jones Act claim is baseless in law and fact."); *McInnis v. Parker Drilling Co.*, No. 01-2927, 2002 U.S. Dist. LEXIS 5154 (E.D. La. Mar. 20, 2002) ("[A] state court Jones Act case may be removed to federal court if the assertion of the Jones Act status is 'baseless in law and fact' and brought 'only to frustrate federal jurisdiction.'"); *Iwag v. Geisel Compania Maritima, S.A.*, 882 F. Supp. 597, 603 (S.D. Tex. 1995) ("The district court must remand a case to state court if the plaintiffs' pleadings allege sufficient facts to support a Jones Act case absent evidence of diversity jurisdiction or attempts to evade removal through fraudulent pleading."). "The doctrine of fraudulent pleading requires that the removing party prove that the allegations of the complaint were fraudulently made with any doubts resolved in favor of the plaintiff." *Iwag*, 882 F. Supp. at 603 (citing *Lackey*, 990

F.2d at 207). "The court may deny remand where, but only where, resolving all disputed facts and ambiguities in current substantive law in the plaintiff's favor, the court determines that the plaintiff has no reasonable possibility of establishing a Jones Act claim on the merits." *Mendez v. Anadarko Petroleum Corp.*, 466 Fed. App'x 316, 318 (5th Cir. 2012).

Marine Management argues that the court can consider materials outside the pleadings because Pelagidis improperly asserted his Jones Act claim. Marine Management cites *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 n. 1 (5th Cir. 2004), for the proposition that "fraudulent joinder" and "improper joinder" are synonymous. Marine Management argues that there are two ways to prove improper joinder: actual fraud in the pleadings or the plaintiff's inability to state a claim on which he has a reasonable basis of recovery.

"In most cases, to determine whether the plaintiff has any possibility of recovery against the . . . defendant, the court should conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim against the defendant." *Butler v. Ensco Intercontinental GmbH*, No. H-16-578, 2017 U.S. Dist. LEXIS 16663, at *4–5 (S.D. Tex. Feb. 7, 2017) (quoting *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016)). A defendant "may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal." *Lackey*, 990 F.2d at 207. Marine Management argues that Pelagidis pleaded his Jones Act claim in bad faith and that he misstated and omitted facts that establish the impropriety of his Jones Act claim. (Docket Entry No. 28 at 2). The court agrees that it may pierce the pleadings and examine other materials in the record to determine whether the Jones Act claims are arguably asserted, but within limits. *See Smallwood*, 385 F.3d at 573 ("[T]here are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete

facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.").

Based on Marine Management's allegations, the court pierces the pleadings and considers other evidence, resolving factual disputes and substantive law ambiguities in Pelagidis's favor, to determine whether the Jones Act applies to his claims against Marine Management.

### iii.    Does the Jones Act Apply?

Marine Management argues that the Jones Act claims do not bar removal because conducting a choice-of-law analysis shows that Greek law applies. Pelagidis argues that asking whether the Jones Act applies at this early stage is appropriate only for simple challenges, such as whether the seaman worked on a qualifying "vessel." A choice-of-law analysis, he argues, presents mixed questions of law and fact that are not appropriately determined at this threshold stage. (Docket Entry No. 31 at 2).

Pelagidis is correct that the inquiry is different at the motion-to-remand stage than it would be at a motion-to-dismiss stage. He is incorrect, however, that the inquiry is wholly inappropriate. *See, e.g.*, *Unterberg*, 2014 U.S. Dist. LEXIS 94009, at *25 (citing *Burchett*, 48 F.3d at 176; *Lackey*, 990 F.2d at 207; *Smallwood*, 385 F.3d at 574) ("But this is a Motion to Remand, *not* a Motion to Dismiss or Motion for Summary Judgment. At this stage, the inquiry is limited to determining whether there is 'no possibility that the plaintiff would be able to establish a cause of action.' . . . Stated alternatively, the court looks to whether it is 'obvious' that the joinder is fraudulent . . . and whether the claim is clearly 'baseless.' . . . Although the court examines the available evidence, this is a 'summary inquiry,' . . . and not 'resolution of the merits.'").

To determine whether the Jones Act or Greek law applies, the court uses the analytical

framework from *Lauritzen v. Larsen*, 345 U.S. 571 (1953), *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 254 (1959), and *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306 (1970). *See Solano v. Gulf King 55, Inc.*, 212 F.3d 902, 905 (5th Cir. 2000). Eight nonexhaustive factors bear on the choice-of-law analysis: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured; (4) the allegiance of the defendant shipowner; (5) the place of contract; (6) the inaccessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations. *Id.* "*Lauritzen* taught that courts should ascertain and value the enumerated points of contract between the transaction and the governments whose competing laws are involved." *Id.*

The factors are not of equal weight. "*Lauritzen* stressed that the law of the flag is generally of cardinal importance, and suggested that the last two enumerated factors should be given very little weight." *Id.* "[T]he significance of each factor must be considered within the particular context of the claim and the national interest that might be served by the application of United States law." *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1119 (5th Cir. 1995) (quoting *Fogleman v. ARAMCO (Arabian Am. Oil Co.*, 920 F.2d 278, 282 (5th Cir. 1991)). "Each factor is to be weighed to determine whether all the factors add up to the necessary substantiality of contacts between the transaction at issue and the United States." *Solano*, 212 F.3d at 905 (citing *Rhoditis*, 398 U.S. at 309 n.4). Each factor must be implemented to effectuate the Jones Act's purposes. *Id.* (citing *Rhoditis*, 398 U.S. at 309 n.4).

The weight of each factor changes depending on whether the maritime activity was a "traditional" maritime activity that involves shipping through international waters, or a "nontraditional maritime context like offshore oil production." *Coats*, 61 F.3d at 1119. "The place of the wrongful act, the allegiance or domicile of the injured, and the place of the contract, which

are less important in the shipping context, are more significant in nontraditional cases . . . ." *Id.* The

parties largely agree that this case arises from a traditional maritime activity. Pelagidis argues that

the *M/T United Ambassador* is a traditional maritime vessel, contrasting its activity to a "Floating

Production Storage and Offloading" facility moored to the seabed to store products but not to

transport them. *See Petrobas Am., Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211, 217 (5th Cir. 2016).

London Club agrees, citing to *Mendez*, 466 Fed. App'x at 317. In *Mendez*, the court considered a

"floating gas-production platform moored in ocean water . . . ." *Id.* at 317. The court, following the

Supreme Court's guidance in *Stewart v. Dutra Construction Co.*, 543 U.S. 481 (2005), explained

that a vessel, as defined by the Jones Act, is one that is "practically capable of maritime

transportation." *Id.* at 318. It does not matter whether the ship is anchored or used for the primary

purpose of navigation or transportation, as long as it is capable of moving. *Id.* Under that test,

the *M/T United Ambassador* is the traditional maritime vessel that was engaged in a traditional

maritime activity of transporting oil. Marine Management argues that the type of activity is

irrelevant to the analysis because none of the factors favor the application of United States law.

The court agrees with the parties that the maritime activity was traditional because the vessel

was capable of maritime transport and did not solely store products while moored to the seabed.

### 1.    The place of the wrongful act

Pelagidis alleges that "[a]t the time of the accident, the Tank was anchored at Sabine Pass

Anchorage," near Port Arthur, Texas. (Docket Entry No. 1-5 at 3–4). Pelagidis was promptly taken

to the hospital and "remained at TIRR Rehabilitation in Houston until August 2017," when he was

admitted to Mentis Neuro Health in Houston. (*Id.* at 4). Pelagidis alleges that he was provided

"partial medical support under the Jones Act requirement of 'maintenance and cure'" while at TIRR

21

and that Future Care, London Club, and Marine Management all "purposefully prevented [him] from continuing treatment at Mentis in Houston, Texas . . . ." (*Id.*).

Marine Management provides additional evidence that the vessel was 15 nautical miles off the Texas coast when the accident occurred, and that the United States territorial waters extend only 12 nautical miles off the coast. *See* Docket Entry No. 18-1 at 34–38; *see also Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 441 n.8 (1989). Even if the accident did occur in the United States waters, Marine Management argues, this factor is given little weight. *See Romero*, 358 U.S. at 384 ("The amount and type of recovery which a foreign seaman should receive . . . should not depend on the wholly fortuitous circumstance of the place of injury.").

Pelagidis responds that the accident occurred within the United States Contiguous Zone, which extends 24 nautical miles off the coast and is subject to certain United States law and regulations. *See* 33 C.F.R. § 2.28(b); § 166.200. The Contiguous Zone, by definition, is outside United States territory, subject only to limited jurisdiction. *See, e.g., U.S. v. Baker*, 609 F.2d 134, 138 (5th Cir. 1980); *see also U.S. v. La.*, 394 U.S. 11, 23 n.26 (1969). Because the accident occurred when the vessel was 15 miles off the Texas coast, it occurred outside the territorial United States.

Marine Management also argues that Pelagidis attempts to "manufacture" a wrongful act by alleging maintenance and cure for medical services provided in Houston.[2] Marine Management cites

---

[2] Marine Management argues that this argument is irrelevant because it did not employ Pelagidis. *See Manderson v. Chet Morrison Contrs., Inc.*, 666 F.3d 373 (5th Cir. 2012) ("A shipowner's obligation to provide cure to an injured seaman is an implied term of a maritime-employment contract and 'does not depend on any determination of fault.' 'Thus, an owner of a vessel is almost automatically liable for the cost of medical treatment . . . when a seaman *in its employ* is injured.'") (emphasis added). Marine Management states that it did not employ Pelagidis, but Pelagidis's pleadings state that he "executed an employment agreement with MMS." (Docket Entry No. 1-5 at 3). The court construes all disputed facts in favor of Pelagidis.

a number of circuit cases that reject considering the location of hospitalization as a factor in a choice-of-law analysis. Although the Fifth Circuit has not addressed this factor, and recognizing the slight weight it receives, it also weighs against applying American law.

### 2. The law of the flag

Pelagidis omits facts related to this factor in his pleadings. Marine Management argues that it is "undisputed" that the *M/T United Ambassador* is a Greek-flagged vessel. (Docket Entry No. 18-1 at 4). Pelagidis does not raise a dispute in response. "The law of the flag has traditionally been of cardinal importance in determining the law applicable to maritime cases." *Coats*, 61 F.3d at 1120; *see also Schexnider v. McDermott Int'l*, 817 F.2d 1159, 1162 (5th Cir. 1987) ("The law of the flag is given *great* weight in determining the law to be applied in maritime cases. As the Supreme Court has held, the law of the flag is 'the most venerable and universal rule of maritime law,' which 'overbears most other connecting events in determining applicable law . . . unless some heavy counterweight appears.'" (quoting *Lauritzen*, 345 U.S. at 584) (emphasis in original)). The factor weighs in favor of applying Greek law.

### 3. The allegiance or domicile of the injured

Pelagidis is a "Greek seaman and a citizen of Greece." (Docket Entry No. 1-5 at 1). This factor weighs in favor of applying Greek law.

### 4. The allegiance of the shipowner

Pelagidis omits facts from his pleadings about the vessel's ownership. Marine Management presents evidence that the *M/T United Ambassador* is a Liberian-owned ship and that all of United Ambassador Inc.'s directors are Greek citizens. (Docket Entry No. 18-1 at 4). Marine Management argues that the court should look beyond the country of registration and find that the ownership is

Greek. *Id.*; *see also Lauritzen*, 345 U.S. at 587 ("[I]t is common knowledge that in recent years a practice has grown, particularly among American shipowners, to avoid stringent shipping laws by seeking foreign registration eagerly offered by some countries. Confronted with such operations our courts on occasion have pressed beyond the formalities of more or less nominal foreign registration to enforce against American shipowners the obligations which out law places upon them."); *see also Villar v. Crowley Maritime Corp.*, 782 F.2d 1478 (9th Cir. 1986) ("Thus, if it is necessary, we can look through the facade of foreign registration and incorporation to find the true ownership of the vessel."); *Bartholomew v. Universe Tankships, Inc.*, 263 F.2d 437 (2d Cir. 1959).

Pelagidis admits that the *M/T United Ambassador* is owned by a company headquartered in either Liberia or Greece. (Docket Entry No. 31 at 3). This factor weighs against applying American law and likely favors applying Greek law.

### 5.    The place of contract

Marine Management presents evidence that it executed its contract with Pelagidis in Piraeus, Greece. (Docket Entry No. 18-1 at 25). The employment contract specifies that Greek law governs. (Docket Entry No. 18-1 at 30).

Pelagidis omits these facts in his pleadings. In his supplemental brief, Pelagidis points to the contract between Valero and the shipowner, which provides that United States maritime law and New York law apply to that contract. He does not explain, however, why the choice-of-law provision in a contract he was not a party to is relevant.

Marine Management argues that choice-of-law provisions in the parties' contract are given significant weight. The contract between Marine Management and Pelagidis, however, expired on December 5, 2016, more than two weeks before the accident occurred. (*Id.*). The contract provides

that "[s]hould the period of Employment expire at a time when the ship is in port unsuitable for the purpose of repatriation or is on a voyage to such a port, the Shipowner *may* extend or reduce the Employment until the ship reaches a suitable port . . . ." (*Id.* at 28) (emphasis added). The contract does not automatically extend. Marine Management has presented no evidence that it exercised its right to extend the contract beyond December 5, 2016. Based on the record evidence, the contract had expired before the accident occurred, and the contractual choice-of-law provision does not affect this analysis. The fact that the contract was executed in Greece, however, weighs in favor of applying Greek law.

### 6.    The inaccessibility of the foreign forum

Pelagidis argues that Marine Management has not proven the accessibility of a Greek forum. This factor is inapplicable in a choice-of-law context; it "is only relevant to *forum non conveniens*." *Coats*, 61 F.3d at 1120 (citing *Lauritzen*, 345 U.S. at 589–90). This factor is neutral.

### 7.    The law of the forum

The law of the forum is United States law. Marine Management argues that this factor should not be given significant weight. "In *Lauritzen*, the Supreme Court rejected the argument that an American forum should simply apply its own law to a maritime tort, since this would in effect reduce the choice-of-law determination to no more than a personal jurisdiction inquiry." *Fogleman*, 920 F.2d at 283. The law of the forum is not "automatically 'inapplicable when [the] defendant was involuntarily made a party . . . .'" *Id.* Because the suit was brought in Texas, "[w]hatever weight the law-of-the-forum factor has . . . falls on the side of the application of United States law." *Id.*

### 8.    The base of operations

Pelagidis omits pleading facts about the shipowner, including where it maintains its base of

operations. "In order to determine a vessel's base of operations for choice-of-law purposes, the court must 'look to the location from which its day-to-day operations are controlled.'" *Sablic v. Armada Shipping Aps*, 973 F. Supp. 745, 751 (S.D. Tex. 1997) (quoting *Fogleman*, 920 F.2d at 284). The base-of-operations analysis "requires consideration of both the ship's and the shipowner's contacts. Courts have considered: the location of the corporate headquarters; the ownership interest in the corporation; where the ship is regularly loaded; where the management of operations occurs; where maintenance is performed; and where shipping agents are located." *In re Cent. Gulf Lines*, No. 01-31028, 2003 U.S. App. LEXIS 28074, at *19 (5th Cir. Mar. 3, 2003).

Marine Management argues that "the evidence is conclusive that the base of operations is Greece (to the extent that operations are not controlled aboard the ship itself)." (Docket Entry No. 18 at 18). Marine Management points to evidence showing that Greece is the ship's base of operations. Marine Management adds the argument that "Pelagidis has not alleged any facts that would suggest a U.S. base of operations for the vessel." (*Id.*). Marine Management presents evidence that it is headquartered in Greece, that its three directors are Greek residents, that two of the three are Greek citizens, and that it executes its contracts in Greece. (Docket Entry No. 18-1 at 4)(*Id.*). The directors of United Ambassador are all Greek citizens and residents. (*Id.*). Marine Management did not own the *M/T United Ambassador*, making relevant only those operations done on a day-to-day basis.

In his supplemental response, Pelagidis argues that there are factual disputes as to where the base of operations is located. He argues that United Ambassador recently filed for bankruptcy in the Southern District of New York, and that Valero filed a "Request for Floating Storage" with U.S. Customs on Marine Management's behalf. (Docket Entry No. 31 at 3). Assuming the truth of both

of those facts and the ties they show to the United States, they do not suffice to show that the *M/T United Ambassador*'s base of operations is in the United States. This factor weighs against applying United States law, because neither the shipowner's nor Marine Management's base of operations is in the United States.

### 9.      Balancing the factors

The only factor that weighs in favor of applying American law is that it is the law of the forum. Four of the factors weigh in favor of applying Greek law. The remaining factors weigh against applying American law. Based on this analysis, the court finds that there is no reasonable basis to predict that Pelagidis can recover under the Jones Act. The facts that Pelagidis alleges are in dispute are insufficient to create a reasonable possibility of recovery under the Jones Act. Because Pelagidis improperly pleaded his Jones Act claim, it is not a bar to removal.

Although the court concludes that the Jones Act does not apply and does not prohibit removal, nonetheless the court has no independent jurisdictional basis on which to retain the general maritime-law claims against Marine Management. The motion to remand must be granted.

### III.    Conclusion

The general maritime-law claims against all the defendants are remanded. The Jones Act does not apply to the claims brought against Marine Management, but this court lacks a jurisdictional basis to retain those claims. Both Marine Management and Pelagidis are Greek citizens and Pelagidis asserts no separate federal-question claims. Marine Management has shown that Greek law applies; no claims "arising under" the laws of the United States create federal question jurisdiction. *See, e.g., Delgado v. Zaragoza*, 267 F. Supp. 3d 892, 899 (W.D. Tex. 2016) ("[A]pplication of such foreign law does not present federal question jurisdiction, nor are state courts

precluded from applying foreign law.") (citing *Union de Pasteurizadores De Juarez Sociedad Anonima De Capital Variable v. Fuentes*, No. 16-CV-137-KC, 2016 U.S. Dist. LEXIS 80986 (W.D. Tex. 2016)).

This case is remanded to the 333rd Judicial District Court of Harris County, Texas.

SIGNED on May 15, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge